IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATIENCE O'DOWD and GARY MILES,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PRECLUDE A NECESSITY DEFENSE (DOC. NO. 120) AND GRANTING MOTION TO STRIKE MS. O'DOWD'S EXPERTS (DOC. NO. 117)**<br><br>Case No. 2:20-cr-00332<br><br>Magistrate Judge Daphne A. Oberg |

Defendants Patience O'Dowd and Gary Miles are charged with four counts of installing range improvements without authorization. (*See* Am. Misdemeanor Info., Doc. No. 103.) This regulation makes it illegal to install, use, maintain, modify, and/or remove range improvements on Bureau of Land Management ("BLM")-administered land without authorization. *See* 43 C.F.R. § 4140.1(b)(2). Ms. O'Dowd and Mr. Miles are also charged with one count of obstruction of transit over public lands. (*See* Am. Misdemeanor Info., Doc. No. 103.) This statute makes it illegal to prevent or obstruct free passage or transit over or through public land "by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means." 43 U.S.C. § 1063.

The United States seeks an order precluding Ms. O'Dowd and Mr. Miles from raising a necessity defense at trial. (Mot. to Preclude Defs. from Raising a Necessity Defense ("Mot. in Limine"), Doc. No. 120.) Relatedly, the United States seeks to strike Ms. O'Dowd's experts on the grounds that her proposed expert testimony would only concern the impermissible necessity defense. (Mot. to Strike Def. Patience O'Dowd's Expert Notice, ("Expert Mot."), Doc. No.

1

117.) The court held a hearing on both motions on September 20, 2022. (*See* Min. Entry, Doc. No. 153.) They are addressed in turn.

I. MOTION IN LIMINE TO PRECLUDE NECESSITY DEFENSE

The United States argues Ms. O'Dowd and Mr. Miles should be prevented from raising a necessity defense at trial. (Mot. in Limine, Doc. No. 120.) Specifically, the United States seeks an order preventing Ms. O'Dowd and Mr. Miles from eliciting from witnesses, on direct or cross-examination, or mentioning in argument, (1) their perceived need to intervene in the BLM's wild horse and burro management by providing water to wild horses or burros on BLM land; (2) their efforts to "save" wild horses or burros in this manner; and (3) the defense of "necessity" or "choice of evils" itself. (*Id.* at 1.) Ms. O'Dowd opposes the motion,[1] but Mr. Miles filed no opposition. (Def. O'Dowd's Mot. to Strike Mot. in Limine, ("Opp'n to Mot. in Limine"), Doc. No. 147.) And both the United States and Ms. O'Dowd filed notices of supplemental authority. (*See* United States' Supp. Br., Doc. No. 151; Supp. to Def. O'Dowd's Mot. to Strike, Doc. No 152.) Where Ms. O'Dowd has not met her burden to establish she is entitled to present a necessity defense and where Mr. Miles did not oppose the government's motion, a necessity defense will not be permitted.

A. Legal Standards

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action." Fed.

---

[1] Ms. O'Dowd filed her response as a motion to strike the United States' motion, instead of as an opposition to the motion. (*See* Opp'n to Mot. in Limine, Doc. No. 147.) Regardless of how the response was filed, it reflects Ms. O'Dowd's intent to oppose the United States' motion in limine. In other words, it is clear Ms. O'Dowd is asking the court to deny the United States' motion and to permit her to raise a necessity defense. Accordingly, Ms. O'Dowd's filing will be considered a properly filed opposition.

R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even where evidence is admissible, the court may exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

A necessity defense requires a defendant to show "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship exists between defendant's action and the avoidance of harm." *United States v. DeChristopher*, 695 F.3d 1082, 1096 (10th Cir. 2012) (internal quotation marks omitted). It is the defendant's initial burden to proffer evidence "which could support a finding in [her] favor on each element of the defense." *United States v. Unser*, 165 F.3d 755, 764 (10th Cir. 1999); *see also United States v. Shields*, 774 F. App'x 434, 437 (10th Cir. 2019) (unpublished) (noting, in order to raise a necessity defense, a defendant "must produce evidence of each element sufficient to warrant its consideration by the jury" (internal quotation marks omitted)). Courts should apply the necessity exception "strictly and parsimoniously." *United States v. Al-Rekabi*, 454 F.3d 1113, 1122 (10th Cir. 2006).

B. <u>Analysis</u>

The United States contends Ms. O'Dowd and Mr. Miles cannot claim a necessity defense for three reasons: (1) they have not shown there was "absolute and uncontrollable necessity," (2) the necessity defense does not apply to acts taken to protect animals, and (3) they cannot show they had no reasonable, legal alterative to violating the law. (Mot. in Limine 3–4, Doc. No. 120.) The United States further contends that because Ms. O'Dowd and Mr. Miles are not entitled to a necessity defense, any evidence regarding their perceived need to provide water to wild horses or burros is irrelevant, would confuse the jury, and would be an improper attempt to raise a

3

necessity defense. (*Id.* at 5.) Because of this, the United States argues any such evidence should be excluded under Rule 403 of the Federal Rules of Evidence, as it would create an unfair prejudice by causing the jury to sympathize with the animals and ignore the law. (*Id.* at 5–6.)

The United States' first point lacks support. The United States has not shown there is an "absolute and uncontrollable necessity" requirement in the Tenth Circuit to raise a necessity defense. The United States cites *United States v. Steward*, 687 F.2d 1270 (10th Cir. 1982), for the proposition that the Tenth Circuit requires a showing of "absolute and uncontrollable necessity." (Mot. in Limine 3, Doc. No. 120.) This misstates the ruling of case. The reference to "absolute and uncontrollable necessity" in *Steward* is a quote from *United States v. The Diana*, 74 U.S. 354 (1869), which the *Steward* court found to be "somewhat stronger language than more recent cases." *Steward*, 687 F.2d at 1276. The *Steward* court did not discuss this standard in any depth, as it found "under any test now prevailing the defendants must fail." *Id.* Because the United States has not established the defendants must show "absolute and uncontrollable necessity" to raise a necessity defense, its argument on this point fails.

However, the United States' final two challenges have some merit. The United States contends the necessity defense is inapplicable when acts are taken to protect animals. (*See* Mot. in Limine at 3–4, Doc. No. 120.) In support of this argument, the United States cites various cases which are informative, but do not directly support the proposition that the necessity defense does not apply to the protection of animals. *See Youngblood v. Placer Cnty. Prob. Dep't*, No. CIV S-02-2387, 2007 U.S. Dist. LEXIS 66418, at *11 (E.D. Cal. Aug. 28, 2007) (unpublished) (finding no necessity defense where public policy requires stray animals be placed in shelters); *United States v. Winnett*, No. 02-10272, 2003 U.S. Dist. LEXIS 10796, at *5, 12–13 (D. Mass. June 23, 2003) (unpublished) (noting "a lack of authority for a federal constitutional

right to defend property from protected wildlife," and finding the defendant failed to establish he exhausted all available legal alternatives); *State v. Le Vasseur*, 613 P.2d 1328, 1332 (1980) (noting Hawaii's necessity statute is specifically limited to people and the United States, not to dolphins); *Brooks v. State*, 122 So. 3d 418, 422 (Fla. Dist. Ct. App. 2013) (holding that avoiding threat of danger or injury to "himself or others" in Florida's necessity defense means it does not cover animals). At the hearing, the United States represented it was unable to find any cases where the necessity defense was applied to acts taken to protect animals.

      Similarly, Ms. O'Dowd does not cite any cases where a defendant was permitted to defend against allegations that she violated a criminal statute by claiming her actions were necessary to save an animal. The cases Ms. O'Dowd cites do not establish the availability of a necessity defense to prevent animals' injury or death. Specifically, she relies on *United States v. Winnett*, 2003 U.S. Dist. LEXIS 10796.[2] (Opp'n to Mot. in Limine 4–5, Doc. No. 147.) While the *Winnett* court recognized the importance of federally protected wildlife, the case does not stand for the proposition that a necessity defense applies when a person violates the law in order to save animals. In *Winnett*, the court held there was no necessity defense available to a defendant who violated the law by killing federally protected wildlife in order to protect his own chickens. 2003 U.S. Dist. LEXIS 10796, at *5–10. The fact that a necessity defense is not available when a defendant kills federally protected wildlife does not mean a necessity defense is available when a defendant violates a law to *save* federally protected wildlife. But that seems to be Ms. O'Dowd's implication.

      Ms. O'Dowd also relies on *Center for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113

---

[2] Ms. O'Dowd refers to this as a second *Winnett* case. (Opp'n to Mot. in Limine 4, Doc. No. 147.) However, this is the same case cited by the United States. (*See* Mot. in Limine 3, Doc. No. 120.) The parties just cite to the case using different case citations.

(D.D.C. 2002), a case quoted by *Winnett*, in her opposition. (*See* Opp'n to Mot. in Limine 4–5, Doc. No. 147.)  At the outset, the case has been vacated and dismissed as moot due a subsequent amendment to the Migratory Bird Treaty Act ("MBTA").  *See Ctr. for Biological Diversity v. England*, No. 02-5163, 2003 U.S. App. LEXIS 1110, at *2 (D.C. Cir. Jan. 23, 2003) (unpublished).  But, even if it were still good law, this case does not recognize a necessity defense when acts are taken to save animals.  The *Center for Biological Diversity* court refused to permit the United States to assert a necessity defense for violating the MBTA when military training killed and harmed several bird species.  201 F. Supp. 2d at 115.  The court characterized the United States' request as asking the court to go beyond the scope of its discretion "and allow it to continue violating these statutes with impunity."  *Id.*  The court reasoned that where "Congress decided not to recognize a national security necessity defense to the MBTA," it could not and would not read such an exception into the statute.  *Id.* at 121–22.  *Center for Biological Diversity* does not support a finding that a necessity defense is available when a defendant violates a law to save federally protected wildlife.  Ms. O'Dowd's policy arguments do not change this outcome where she offers no legal authority supporting a necessity defense in this context.  (*See* Opp'n to Mot. in Limine 4–5, Doc. No. 147.)

      Even if a necessity defense were legally recognized in this context, neither defendant has proffered facts sufficient to indicate that violating the law was the sole recourse.  When considering whether to instruct a jury on an affirmative defense, the court acts as a gatekeeper.  *Al-Rekabi*, 454 F.3d at 1123.  To establish a jury should be instructed on an affirmative defense, "a defendant must produce evidence of each element sufficient to warrant its consideration by

6

the jury."[3]  *Id.* at 1122.  Sufficient evidence is that which "would permit the jury to find in her favor by a preponderance on each element of the defense."  *United States v. Dixon*, 901 F.3d 1170, 1177 (10th Cir. 2018).  The sufficiency of the evidence is viewed in the light most favorable to the defendant.  *Id.* at 1178.

Ms. O'Dowd has neither established nor proffered evidence sufficient to show she had no legal alternative to violating the law.  *See DeChristopher*, 695 F.3d at 1096.  Ms. O'Dowd argues she pursued all legal means available, including filing administrative court actions, engaging in public notifications, and calling the police, the BLM police, and the Utah BLM Public Relations Specialist.  (Opp'n to Mot. in Limine 6, Doc. No. 147.)  She contends the BLM's sovereign immunity limited her options.  (*Id.* at 7.)  She also notes the events occurred over a holiday weekend when the BLM police were not answering calls.  (*Id.*)  In her proposed jury instructions, Ms. O'Dowd noted the only procedure, policy, or form to apply for a temporary water trough is through "an unpublished informal verbal request."  (O'Dowd's Proposed Jury Instructions 7, Doc. No. 129.)  Ms. O'Dowd explains this unpublished policy has no specific requirements for approval, disapproval, follow through, or feedback.  (*Id.* at 7–8.)  Ms. O'Dowd argues she pursued all formal and informal legal alternatives and exhausted all legal avenues but this was a dire emergency, and she had to act, or the wild burros and horses would die.

Even presuming this proffer to be true, Ms. O'Dowd has proffered insufficient evidence to show she had no legal alternatives.  First, Ms. O'Dowd's charged conduct did not occur over one holiday weekend.  She is charged with four counts of making range improvements between May 25, 2020, and December 5, 2020.  (*See* Am. Misdemeanor Info., Doc. No. 103.)  She did

---

[3] To prevail on a necessity defense at trial, a defendant must prove this defense by a preponderance of the evidence.  *Al-Rekabi*, 454 F.3d at 1122.  It is the defendant's burden; "the government is not required to disprove" the affirmative defense.  *Id.*

7

not proffer facts showing she had no legal alternative for more than six months. Moreover, even when applicable, a necessity defense only allows a person to violate the law in a limited way. The longevity of Ms. O'Dowd's alleged conduct indicates it was unjustified by necessity. The necessity Ms. O'Dowd claims (saving the wild burros and horses from lack of water over a holiday weekend when she was unable to reach the BLM) would not justify her alleged response (watering the animals at least four times between May 2020 and December 2020). *Cf. Al-Rekabi*, 454 F.3d at 1123–25 (noting, in a case of possession of a stolen firearm, the necessity claimed (a child possessing a loaded gun) did not justify the response—maintaining control of the gun instead of reporting it to the police, returning it to the owner, or leaving it in a safe place where the police could find it). Thus, Ms. O'Dowd has not proffered facts showing she had no other, reasonable, legal alternative to violating the law. Put differently, even if illegal acts to protect animals could be justified by the necessity defense generally, it would not apply in this case.

Where no party has identified legal authority supporting the application of a necessity defense to criminal acts taken for the protection of animals—and no party has proffered facts sufficient to establish the defense applies in this case—no necessity defense will be permitted.[4]

---

[4] Ms. O'Dowd referred to duress and coercion in her proposed jury instructions, not necessity. (*See* O'Dowd's Proposed Jury Instructions 14, Doc. No. 129.) It is of no consequence where courts have used "duress" and "necessity" interchangeably—and the concepts have merged somewhat under the law. *See United States v. Jones*, 254 F. App'x 711, 721 (10th Cir. 2007) (unpublished). To establish a duress defense, a defendant must prove she (1) "was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to [herself] [or a family member, or others];" (2) she "had no reasonable, legal alternative to violating the law, that [she] had no chance both to refuse to do the criminal act and also to avoid the threatened harm;" and (3) "a direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm." Tenth Circuit Crim. Pattern Jury Instruction

Accordingly, the United States' motion, (Doc. No. 120), is granted to the extent it seeks to preclude Ms. O'Dowd and Mr. Miles from raising a necessity defense. They will not be permitted to argue or present evidence that their alleged conduct was justified by the necessity of saving wild burros and horses. However, the United States' remaining request—that Ms. O'Dowd and Mr. Miles be precluded from mentioning anything related to why they allegedly made range improvements—seems overbroad and is premature at this juncture. (*See* Mot. in Limine 1, Doc. No. 120.) Context can be important. It may be necessary for Ms. O'Dowd or Mr. Miles to provide some limited context for their actions—if they can do so consistent with this ruling. Rulings on the extent to which this context will be permitted (if at all) are reserved.

II.  MOTION TO STRIKE EXPERTS

The United States seeks to strike Ms. O'Dowd's experts on the grounds that the expert notice is deficient, and Ms. O'Dowd seeks to introduce unsupported, unspecified, and unnecessary expert testimony. (Expert Mot. 1, Doc. No. 117.) After the United States filed its motion, Ms. O'Dowd had an opportunity to supplement her expert notice and respond. (*See* Docket Text Order, Doc. No. 118.) In response to Ms. O'Dowd's supplement, (Supp. to Expert Notice and Opp'n to United States Mot. to Strike ("Supp."), Doc. No. 133), the United States argues expert testimony is impermissible in this case and the proposed experts are unqualified, (United States' Reply in Supp. of Mot. to Strike ("Reply") 1–2, Doc. No. 139). Because an expert's scientific, technical, or other specialized knowledge will not help the jury understand the evidence or determine a fact in issue, the United States' motion is granted.

---

§ 1.36. A duress defense is premised on an imminent threat directed at a person. And Ms. O'Dowd has neither proffered nor established facts showing any person was under imminent threat. To the extent Ms. O'Dowd seeks to present a duress defense instead of a necessity defense, it is denied on these grounds—as well as for the reasons stated in this order.

A.  Legal Standards

In general, only relevant evidence is admissible.  Fed. R. Evid. 402.  To be relevant, the evidence must have "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  And, the fact must be "of consequence in determining the action."  (*Id.*)  An expert witness is an individual who "is qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  An expert witness may testify at trial "in the form of an opinion if," among other things, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).

B.  Analysis

Ms. O'Dowd proposes two expert witnesses: Dr. Lester Friedlander, BA, DVM, and Eric Molvar.  (Supp., Doc. No. 133.)  According to the supplemental expert notice, Dr. Friedlander will testify he is concerned about the lack of humane protection of wild equines and their rightful water supply, that the wild burros were desperate and stressed on May 26, 2020 (after being without water for at least two days), that wild horses were in a similar situation, and the BLM had no reason not to respond to the many requests for collaboration from Ms. O'Dowd and himself.  (Supp. 5, Doc. No. 133.)  Ms. O'Dowd indicates Mr. Molvar will testify that providing water to wild equines does not domesticate or negatively affect them but, rather, saves their lives.  (*Id.* at 7.)  He will also testify that confining wild equines to fenced pastures results in semi-roaming and they become endangered when denied access to water and prevented from going through gates.  (*Id.*)  Lastly, he will opine as to humane alternatives to helicopter roundups, such as darting with contraceptives; the status of wild horses and burros as wild animals; that the BLM has not proactively managed water rights for

10

the Muddy Creek Wild Horses and Sinbad Wild Burros; and the public has been misled regarding the impact of temporary water troughs.  (*Id.* at 7–9.)

Ms. O'Dowd argues this testimony is relevant to her proposed necessity/duress defense. (*Id.* at 1.)  The United States argues the experts should be struck where a necessity defense is improper in this case.  (Reply 2, Doc. No. 139.)  Specifically, the United States contends scientific, technical, or other specialized knowledge would not help the jury understand the evidence or determine a fact in issue—except as related to a necessity defense.  (*Id.*)

Where Ms. O'Dowd has not established a necessity/duress defense should be permitted, there is no need for expert testimony.  The issues for the jury to determine are whether the defendants installed range improvements without authorization on public lands and whether they obstructed transit over or through public land by certain means.  (*See* Am. Misdemeanor Info., Doc. No. 103); 43 C.F.R. § 4140.1(b)(2); 43 U.S.C. § 1063.  Ms. O'Dowd has not proposed any scientific, technical, or other specialized knowledge by her experts which will help the jury understand the evidence relevant to these issues or help determine a fact in issue.  Thus, the United States' motion, (Doc. No. 117), is granted.  Ms. O'Dowd is not permitted to call Dr. Friedlander or Mr. Molvar as expert witnesses.

## CONCLUSION

The United' States' motion in limine, (Doc. No. 120), is granted in part and denied in part.  Where Ms. O'Dowd and Mr. Miles have not established a necessity defense is an available defense to criminal acts taken for the protection of animals, no necessity defense will be permitted.  Rulings on limited information provided for context are reserved.  Where no scientific, technical, or other specialized knowledge will help the jury understand the evidence at

trial or determine a fact in issue, the United States' motion to strike experts, (Doc. No. 117), is granted.

DATED this 23rd day of September, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge